**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

IRENE MARIE CABRERA,  ) No. CV 13-7614-AS
                      )
            Plaintiff, ) **MEMORANDUM OPINION**
      v.              )
                      )
CAROLYN W. COLVIN,    )
Acting Commissioner of the )
Social Security Administration, )
                      )
            Defendant. )
_____ )

**PROCEEDINGS**

On October 15, 2013, Plaintiff Irene Marie Cabrera filed a Complaint seeking review of the denial of her application for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). (Docket Entry No. 3.) Plaintiff filed an Amended Complaint on December 9, 2013. (Docket Entry No. 9.) The parties then consented to proceed before a United States Magistrate Judge. (Docket Entry Nos. 11, 12.) On April 14, 2014, Defendant filed an Answer to the Amended Complaint along with

1

the Administrative Record ("A.R."). (Docket Entry Nos. 15, 16.) The parties filed a Joint Stipulation ("Joint Stip.") on July 3, 2014, setting forth their respective positions regarding Plaintiff's claim. (Docket Entry No. 17.) The Court has taken this matter under submission without oral argument. See C.D. Cal. L.R. 7-15.

## BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On October 21, 2010, Plaintiff filed applications for DIB and SSI. (A.R. 123-35.) Plaintiff alleged disability due to carpal tunnel syndrome and asthma as well as from pain in her neck, shoulders, and back. (See A.R. 32.)

The Commissioner denied Plaintiff's disability claims by initial determination on February 25, 2011. (A.R. 79-83.) Plaintiff then requested a de novo hearing before an Administrative Law Judge ("ALJ"). (A.R. 84.) The ALJ, Zane Lang, held a hearing on January 3, 2012, taking testimony from Plaintiff as well as vocational expert ("VE") Sandra Schneider. (A.R. 57-76.) Plaintiff also amended her alleged disability-onset date at the hearing from May 6, 2009, to January 1, 2011. (A.R. 30.)

On January 17, 2012, the ALJ issued a decision denying Plaintiff's applications for DIB and SSI. (A.R. 27-42.) The ALJ found that Plaintiff suffered from the following medically determinable severe impairments: carpal tunnel syndrome; degenerative disc disease of the cervical and lumbar spine; degenerative joint

2

disease of the right shoulder; and asthma.  (A.R. 32.)  The ALJ then determined that Plaintiff had the residual functional ("RFC") to perform medium work, including (1) lifting up to 50 pounds occasionally and 25 pounds frequently, (2) standing and/or walking up to six hours over the course of an eight-hour workday, and (3) sitting up to six out of eight hours.  (A.R. 34.)  The ALJ also included the following non-exertional restrictions: no more than frequent fingering with the dominant right upper extremity; no more than frequent overhead reaching with the right shoulder; and no concentrated exposure to fumes, odors, dusts, gases, and other environmental irritants.  (Id.)

Based on Plaintiff's RFC, the ALJ determined that Plaintiff could perform her past relevant work as a child monitor (DOT No. 301.667-010), warehouse worker (DOT No. 922.678-058), and fire equipment inspector (DOT No. 739.484-014).  (A.R. 37-38.)  Accordingly, the ALJ found that Plaintiff was not disabled from January 1, 2011, through the date of the decision.  (A.R. 38.)

In reaching his decision, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms.  (A.R. 35.)  But the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent that they were inconsistent with the ALJ's RFC assessment.  (Id.)  The ALJ's credibility finding was based on inconsistencies with the

3

objective medical evidence as well as Plaintiff's course of treatment, work history, and inconsistent statements. (A.R. 35-36.)

The ALJ also declined to give substantial weight to the opinion of Plaintiff's treating physician, Dr. Robert Partovy. (A.R. 37.) While acknowledging that a treating physician's opinion is ordinarily entitled to significant weight, the ALJ found that Dr. Partovy's opinions lacked evidentiary support in the record. (Id.) Instead, the ALJ found that Dr. Partovy's conclusions "relied quite heavily" on Plaintiff's subjective report of her symptoms and limitations, which the ALJ found lacked credibility. (Id.)

After the ALJ issued his unfavorable decision, Plaintiff requested that the Appeals Council review the decision. (A.R. 24-26.) The request was denied on July 11, 2013. (A.R. 6-12.) The ALJ's decision then became the final decision of the Commissioner, allowing this Court to review the decision.[1] See 42 U.S.C. §§ 405(g); 1383(c).

**PLAINTIFF'S CONTENTION**

Plaintiff contends that the ALJ erred in failing to provide specific and legitimate reasons for rejecting the opinions of her treating physician, Dr. Robert Partovy. (Joint Stip. 4.)

---

[1] The Appeals Council granted Plaintiff's request for an extension of time to file a civil action, so her Complaint in this action was timely. (A.R. 1-2.)

4

**STANDARD OF REVIEW**

This court reviews the Administration's decision to determine if: (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used proper legal standards. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). "Substantial evidence is more than a scintilla, but less than a preponderance." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). To determine whether substantial evidence supports a finding, "a court must consider [] the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). As a result, "[i]f evidence can reasonably support either affirming or reversing the ALJ's conclusion, [a] court may not substitute its judgment for that of the ALJ." Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1196 (9th Cir. 2004).

**APPLICABLE LAW**

"The Social Security Act defines disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (quoting 42 U.S.C. § 423(d)(1)(A)). The ALJ follows a five-step, sequential analysis to determine whether a claimant has established disability.  20 C.F.R. § 404.1520.

At step one, the ALJ determines whether the claimant is engaged in substantial gainful employment activity. Id. § 404.1520(a)(4)(i). "Substantial gainful activity" is defined as "work that . . . [i]nvolves doing significant and productive physical or mental duties[] and . . . [i]s done (or intended) for pay or profit." Id. §§ 404.1510, 404.1572. If the ALJ determines that the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two which requires the ALJ to determine whether the claimant has a medically severe impairment or combination of impairments that significantly limits her ability to do basic work activities. See id. § 404.1520(a)(4)(ii); see also Webb, 433 F.3d at 686. The "ability to do basic work activities" is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b); Webb, 433 F.3d at 686. An impairment is not severe if it is merely "a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities." Webb, 433 F.3d at 686.

If the ALJ concludes that a claimant lacks a medically severe impairment, the ALJ must find the claimant not disabled. Id.; 20 C.F.R. § 1520(a)(ii); Ukolov v. Barnhart, 420 F.3d 1002, 1003 (9th Cir. 2005) (holding that the ALJ need not consider subsequent steps if there is a finding of "disabled" or "not disabled" at any step).

However, if the ALJ finds that a claimant's impairment is severe, then step three requires the ALJ to evaluate whether the claimant's impairment satisfies certain statutory requirements

6

entitling her to a disability finding. <u>Webb</u>, 433 F.3d at 686. If the impairment does not satisfy the statutory requirements entitling the claimant to a disability finding, the ALJ must determine the claimant's RFC, that is, the ability to do physical and mental work activities on a sustained basis despite limitations from all her impairments. 20 C.F.R. § 416.920(e).

Once the RFC is determined, the ALJ proceeds to step four to assess whether the claimant is able to do any work that she has done in the past, defined as work performed in the last fifteen years prior to the disability onset date. If the ALJ finds that the claimant is not able to do the type of work that she has done in the past or does not have any past relevant work, the ALJ proceeds to step five to determine whether—taking into account the claimant's age, education, work experience, and RFC—there is any other work that the claimant can do and if so, whether there are a significant number of such jobs in the national economy. <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. § 404.1520(a)(4)(iii)-(v). The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. <u>Tackett</u>, 180 F.3d at 1098.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

7

**DISCUSSION**

After consideration of the record as a whole, the Court finds that the ALJ's decision is supported by substantial evidence and is free from material[2] legal error.

**A.   The ALJ Did Not Err in Weighing the Opinions of Dr. Partovy**

The ALJ gave little weight to the opinion of her treating physician, Dr. Partovy, because of the doctor's reliance on Plaintiff's testimony, his brief treating relationship with Plaintiff, and inconsistencies with the consultative examiner Dr. Seung Ha Lim. (A.R. 37.) However, Plaintiff argues that these bases for discounting her treating physician's opinions are legally insufficient. (Joint Stip. 4–8.) On the other hand, Defendant argues that the ALJ permissibly rejected Dr. Partovy's opinions because they were not supported by the overall objective evidence. (Joint Stip. 14.) For the reasons discussed below, the Court finds that the ALJ did not err in his assessment of Dr. Partovy's opinions regarding the severity of Plaintiff's impairments.

/ / /

/ / /

/ / /

---

[2]   The harmless error rule applies to the review of administrative decisions regarding disability. See McLeod v. Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (stating that an ALJ's decision will not be reversed for errors that are harmless).

8

1      1.   Legal Standard

2

3          In general, "[t]he opinion of a treating physician is given

4     deference because 'he is employed to cure and has a greater

5     opportunity to know and observe the patient as an individual.'"

6     Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th

7     Cir. 1999) (quoting Sprague v. Bowen, 812 F.2d 1226, 1230 (9th

8     Cir. 1987)).  But a treating physician's opinion "is not necessarily

9     conclusive as to either the physical condition or the ultimate issue

10    of disability." Id.  "The ALJ need not accept the opinion of any

11    physician including the treating physician, if that opinion is brief,

12    conclusory, and inadequately supported by clinical findings." Thomas

13    v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002)

14

15         When rejecting the uncontroverted opinion of a treating

16    physician, the ALJ must present "clear and convincing reasons." Id.

17    at 957.  However, where there are conflicting medical opinions, as is

18    the case here, "the ALJ may reject the opinion of a treating

19    physician in favor of a conflicting opinion of an examining physician

20    if the ALJ makes 'findings setting forth specific, legitimate reasons

21    for doing so that are based on substantial evidence in the record.'"

22    Id. (quoting Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).

23

24         2.   Conflicting Medical Evidence

25

26         The Court turns first to the conflicting medical evidence relied

27    on by the ALJ to discount Dr. Partovy's opinion that Plaintiff's

28

9

symptoms severely limited her ability to work or perform work-like activities. (See A.R. 37,295-303.) The ALJ found that Dr. Partovy's September 2011 assessment of Plaintiff's limitations was inconsistent with the observations of other doctors in the record and lacked objective support. (A.R. 37.) For example, an MRI of Plaintiff's cervical spine showed minimal disc desiccation and no evidence of signal abnormalities within the central cord. (A.R. 35-37, 277-78.) X-rays of Plaintiff's wrists in May and August of 2011 were also relatively normal as were the results of electromygraphic and nerve conduction studies performed on May 19, 2011. (A.R. 35-37, 258-59, 279, 288-91.) The Court finds that this conflicting medical evidence constitutes a specific and legitimate reason for discounting Dr. Partovy's opinions. See Thomas, 278 F.3d at 957; see also 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give the opinion.").

Nevertheless, Plaintiff argues that the ALJ erred because Dr. Partovy's opinions were substantiated by the record. (Joint Stip. 7-8.) Plaintiff cites to limited portions of the record to support this argument. (Id.; A.R. 280 (radiculopathy diagnosis), 293 (positive Tinel's sign), 315 (Plaintiff reports chronic neck pain), 316 (radiculopathy diagnosis from Dr. Partovy).) However, the Court finds that these portions of the record are actually consistent with the ALJ's determination. The ALJ discounted Dr. Partovy's assessment that Plaintiff's symptoms precluded her from essentially all work activity. (See A.R. 37.) "While the undersigned concurs with Dr.

Partovy that the claimant's impairments limit her ability to work to some degree, this opinion cannot be given controlling weight because it is without substantial support from other evidence in the record." (A.R. 37.)   The ALJ agreed with Dr. Partovy's assessment that Plaintiff's impairments have at least some limiting effect, which is consistent with the diagnoses and symptoms referenced by Plaintiff in the parties' Joint Stipulation.   However, the ALJ gave less weight to Dr. Partovy's opinion of the severity of those limiting effects, and Plaintiff's citations to the medical record do not contradict this determination.   As discussed below, the ALJ found that Dr. Partovy's opinion with respect to the severity of Plaintiff's symptoms was heavily based on Plaintiff's unreliable subjective statements, as opposed to the objective medical evidence.

Plaintiff also argues that the ALJ erred in discounting Dr. Partovy's opinion in favor of the opinion of the consultative examiner, Dr. Lim, because a treating physician's opinion is generally afforded more weight.   (Joint Stip. 7-8.)   As opposed to Dr. Partovy who concluded that Plaintiff's symptoms precluded her from all work, Dr. Lim opined that Plaintiff could perform work at a medium exertional level with the additional restrictions articulated in the ALJ's RFC.   (A.R. 36, 236-39.)

The Court finds that the ALJ did not err in assigning greater weight to Dr. Lim's opinion since, unlike Dr. Partovy's opinion, it was consistent with the overall medical record, including the evidence discussed above.   See 20 C.F.R. 404.1527(c)(4) ("Generally,

the more consistent an opinion is with the record as a whole, the more weight we will give that opinion."); see also Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (holding that an examining physician's opinion alone may constitute substantial evidence supporting the ALJ's findings with respect to a claimant's physical impairment). As discussed below, the Court's conclusion is further supported by the ALJ's other reasons for assigning less weight to Dr. Partovy's opinions.

        3.   Reliance on Plaintiff's Subjective Statements

     The ALJ also discounted Dr. Partovy's opinions regarding the severity of Plaintiff's symptoms, in part, based on his reliance on Plaintiff's subjective statements.  (A.R. 37.)

        Given the lack of objective support, Dr. Matthews's [sic]
        opinion apparently relied quite heavily on the subjective
        report of symptoms and limitations provided by the
        claimant, and seemed to accept uncritically as true most,
        if not all, of what the claimant reported.  Yet, as
        explained elsewhere in this decision, there exist good
        reasons for questioning the reliability of the claimant's
        subjective complaints.

(Id.)

     Plaintiff argues that these findings from the ALJ are improper for two reasons.  First, as indicated above, the ALJ referred to a "Dr. Matthews," as opposed to Dr. Partovy, in discussing the reliance on Plaintiff's subjective statements.  (Joint Stip. 7.)  There is no Dr. Matthews anywhere in the record.  (Id.)  However, the Court finds

that the reference is a typographical error. Within the context of the entire paragraph, it is clear that the ALJ intended "Dr. Matthews's opinion" to read "Dr. Partovy's opinion." (<u>See</u> A.R. 37.) The paragraph is dedicated to the ALJ's reasons for discounting Dr. Partovy's opinions. (<u>See</u> <u>id.</u>) In the paragraph, the ALJ distinguished Dr. Partovy's opinions and findings from the objective medical evidence and the opinions of other doctors in the record. (<u>Id.</u>) Furthermore, the fact that there is no opinion from a Dr. Matthews in the record supports the Court's conclusion that the ALJ merely made a typographical error. (<u>See</u> Joint Stip. 14; A.R. Index.)

Plaintiff's second argument is that there must be evidence of "impropriety" before the ALJ can reject Dr. Partovy's opinions for heavily relying on Plaintiff's statements, and there is no evidence of impropriety here. (Joint Stip. 7.) Plaintiff cites two decades-old cases to support her asserted impropriety requirement. (<u>Id.</u>); <u>Nguyen v. Chater</u>, 100 F.3d 1462, 1464 (9th Cir. 1996); <u>Ratto v. Sec'y, Dep't of Health & Human Servs.</u>, 839 F. Supp. 1415, 1426 (D. Or. 1993). However, the issues presented in both cases are distinguishable from this case.

In <u>Nguyen</u>, the Ninth Circuit held that an ALJ's rejection of a medical opinion based on the fact that the claimant was referred to the doctor by her attorney was improper. 100 F.3d at 1464-65. The court held that the source of a doctor referral is only relevant where there is no objective medical evidence for the referral and there is evidence of "actual improprieties." <u>Id.</u> at 1464. In this

13

case, however, the ALJ did not question the actual referral to Dr. Partovy for treatment.   Instead, the ALJ questioned Dr. Partovy's opinions because they were based largely on Plaintiff's description of her symptoms, which the ALJ found lacked credibility. (A.R. 35-37.)   Moreover, unlike in <u>Nguyen</u>, there is conflicting objective medical evidence in the record here.   (See <u>id.</u>)

The <u>Ratto</u> decision is similarly distinguishable.   In <u>Ratto</u>, the court found that the ALJ "may not assume that doctors routinely lie in order to help their patients collect disability" and that a doctor's findings "are not less trustworthy because the examination was procured by the plaintiff."   839 F. Supp. at 1426.   However, the ALJ did not assume or find Dr. Partovy's testimony "less trustworthy" simply because he is Plaintiff's doctor.   Rather, the ALJ acknowledged the weight typically given to treating doctors like Dr. Partovy, but found that Dr. Partovy's opinion heavily relied on Plaintiff's incredible statements.   (A.R. 37.)

"An ALJ may reject a treating physician's opinion if it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible."   <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1041 (9th Cir. 2008); <u>see also</u> <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1043 (9th Cir. 1995) ("[A]n opinion of disability premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded, once those complaints have been properly discounted.").   In this case, the ALJ found that Plaintiff's accounts of the severity of her symptoms lacked credibility.

14

(A.R. 35–36.)   Moreover, Plaintiff does not challenge the ALJ's adverse credibility finding with respect to her testimony. Therefore, the Court finds that Dr. Partovy's heavy reliance on Plaintiff's incredible subjective claims is a specific and legitimate reason for the ALJ to reject Dr. Partovy's opinions about the limiting effects of Plaintiff's symptoms.

4.   <u>Brief Treating Relationship</u>

Plaintiff also challenges the ALJ's use of Dr. Partovy's brief treating relationship with Plaintiff — only about five months before rendering his disability opinion — as a reason for discounting his medical opinions.   (Joint Stip. 7.)   Plaintiff draws a comparison to Dr. Lim, the consultative examiner, whose opinion was given great weight by the ALJ.   (<u>Id.</u>; A.R. 36–37.)   According to Plaintiff, it is illogical to discount Dr. Partovy's opinion based on a brief treating relationship while giving great weight to Dr. Lim's opinion when Dr. Lim only saw Plaintiff once.   (Joint Stip. 7.)

The Court finds that Plaintiff's comparison of the length of Dr. Partovy's treating relationship to Dr. Lim's one-time examination lacks context.   The ALJ considered Dr. Partovy's brief treating relationship as a factor in conjunction with the objective medical record and the doctor's heavy reliance on Plaintiff's incredible statements.   (<u>See</u> A.R. 37.)

/ / /

/ / /

15

An ALJ may properly consider the length of the relationship between a treating physician and the claimant when determining the weight to be given to that treating physician's opinion.  20 C.F.R. § 404.1527(c)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion.")  Here, Dr. Partovy first saw Plaintiff in April 2011 and filled out a disability questionnaire opining that Plaintiff was unable to work only five months later in September 2011.  (A.R. 37, 295–306.)  Based on this information, the ALJ found that Dr. Partovy's treating relationship with Plaintiff "was rather brief at the time he rendered his opinion, *further limiting* the probative value of his opinion." (A.R. 37 (emphasis added).)  The ALJ did not rely solely on the brief treating relationship to discount Dr. Partovy's opinion, which may have raised a red flag in comparison to Dr. Lim.  Instead, the ALJ properly considered the length of the treating relationship in light of the lack of supporting objective medical evidence and Dr. Partovy's heavy reliance on Plaintiff's incredible statements.

**CONCLUSION**

The Court finds that the ALJ stated specific, legitimate reasons for discrediting Dr. Partovy's opinions about the limiting effects of Plaintiff's symptoms.  See Thomas, 278 F.3d at 957–58.  The ALJ's decision that Plaintiff failed to establish disability was properly based upon substantial evidence.

**ORDER**

For all of the foregoing reasons, this Court affirms the decision of the Administrative Law Judge.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: January 2, 2015.

                                        _/s/_____
                                        ALKA SAGAR
                                        UNITED STATES MAGISTRATE JUDGE

17